IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ASHLEY I. S. C., | ) |
|     Plaintiff, | ) ) ) |
| v. | ) ) Case No. 22-cv-00201-SH |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) ) ) |
|     Defendant. | ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Ashley I. S. C. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits.

**I.    Disability Determination and Standard of Review**

Under the Act, an individual is disabled if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 416.920. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 416.920(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 416.960(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test

has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.   Background and Procedural History

Plaintiff applied for Title XVI disability benefits on March 6, 2019. (R. 186-212.) In her application, Plaintiff alleged that she has been unable to work since August 2, 2016, due to conditions including manic bipolar 1 disorder, severe anxiety, and depression. (R. 192, 206, 225.) Plaintiff was 21 years old at the time of the ALJ's decision. (R. 32, 192.) She has less than a high school education and no past relevant work. (R. 40, 57, 226.)

Plaintiff's claims were denied initially and upon reconsideration. (R. 91-93, 98-102.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which the ALJ conducted on January 26, 2021. (R. 37-60, 104-06.) The ALJ then denied benefits and found Plaintiff not disabled. (R. 23-32.) The Appeals Council denied review on February 24, 2022 (R. 1-5), rendering the Commissioner's decision final, 20 C.F.R. § 416.1481. Plaintiff now appeals.

## III.   The ALJ's Decision

In her decision, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the application date. (R. 25.) At step two, the ALJ found Plaintiff had the following severe impairments: (1) affective disorder; (2) anxiety disorder; (3) personality disorder; and (4) substance abuse disorder. (*Id.*) At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment. (R. 25-27.)

After considering the evidence, the ALJ concluded Plaintiff had the RFC to perform "a full range of work at all exertional levels" with certain physical, non-exertional limitations and the following mental limitations:

> [The claimant] is limited to unskilled work that includes the ability to understand, remember, and carry out simple, routine instructions and tasks; make simple work-related decisions; and respond appropriately to occasional routine changes in the work setting. She can perform job tasks independently, appropriately, and at a consistent pace. She can perform goal-oriented work in which job tasks do not have to be completed within a strict time deadline. She can have occasional interaction with supervisors and coworkers and incidental contact with the public.

(R. 27.) The ALJ then provided a recitation of the evidence that went into this finding. (R. 27-30.) At step four, the ALJ found Plaintiff had no past relevant work. (R. 30.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform work that existed in significant numbers in the national economy, such as price marker, church janitor, and cleaner. (R. 30-31.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 31-32.)

## IV.   Issues

On appeal, Plaintiff asserts the ALJ erred by: (1) failing to account for her inability to interact with the general public in her RFC (ECF No. 11 at 8-9); and (2) accepting representative jobs at step five that were inconsistent with the RFC and the Dictionary of Occupational Titles ("DOT") (*id.* at 5-9).[1] Having considered the ALJ's decision and the

---

[1] In the portion of her brief disputing the ALJ's step-five findings, Plaintiff references her borderline personality disorder and other diagnoses, maintaining they would purportedly cause fatigue, sleep apnea, etc. (*Id.* at 7-8.) Based on the incorrect record citations and the lack of evidence supporting these additional impairments, this appears to be an argument from another brief and not pertinent to this case. (*Id.*) In any event, the argument is undeveloped and insufficient to allow for appellate review.

administrative record, the undersigned finds no error. Plaintiff's arguments are reorganized for clarity.

V. **Analysis**

    A. **The RFC.**

Plaintiff's arguments, primarily, relate to the claimed inconsistency between the DOT and the ALJ's step-five findings. However, in the midst of these arguments, Plaintiff also briefly argues that the ALJ failed to account for her inability to interact with the public when formulating her RFC. (*Id.* at 8-9.) Specifically, Plaintiff claims her RFC should contain a more restrictive limitation on social interaction given her various mental health diagnoses and symptoms. (*Id.*) Because this argument relates to the sufficiency of evidence supporting Plaintiff's RFC, the Court will consider it first.

        1. **General RFC Considerations**

In order to proceed to steps four and five of the sequential evaluation, the ALJ must first determine a claimant's RFC. That is, a claimant may have impairments and related symptoms, and those symptoms may cause physical or mental limitations that affect what the claimant can do in a work setting. 20 C.F.R. § 416.945(a)(1). The claimant's RFC is what's left—"the most [the claimant] can still do despite [her] limitations." *Id*. The Commissioner makes this decision based on "all the relevant medical and other evidence" in the case record. *Id*. § 416.920(e).

In assessing the RFC, the ALJ must include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence" and must "explain how any material inconsistencies or ambiguities in the evidence . . . were considered and resolved." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Categories of evidence include (1) objective medical

5

evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) certain prior administrative medical findings. 20 C.F.R. § 416.913(a).

### 2. RFC Assessment in this Case

In arriving at Plaintiff's RFC for social interaction, the ALJ discussed Plaintiff's testimony; the longitudinal medical record; and the findings of her treating, consultative, and reviewing physicians.[2] (R. 27-30.) Considering this evidence, the ALJ determined Plaintiff could "have occasional interaction with supervisors and coworkers and incidental contact with the public." (R. 27, 30.)

Plaintiff challenges this finding by, first, arguing that her "diagnoses of anxiety, other traumatic stress disorder, bipolar II disorder[,] and borderline personality disorder" indicate that she "should not be allowed to interact with any of the general public." (*Id.* at 8.) Yet it is not diagnoses, "but the resulting functional limitations that determine disability." *Carol J. B. v. Kijakazi*, No. 20-CV-534-JFH-JFJ, 2022 WL 902722, at *2 (N.D. Okla. Mar. 28, 2022) (citing *Coleman v. Charter*, 58 F.3d 577, 579 (10th Cir.

---

[2] The ALJ considered, among other things, the report of Plaintiff's mother that she spent a lot of time with Plaintiff doing various activities, that Plaintiff cares for her brother and grandpa, but that Plaintiff also gets "bad anxiety around lots of people," "mostly stays home," and rarely hangs out with friends (R. 27); Plaintiff's testimony of "problems interacting with customers," not being able to "work with other people," and "crying spells once or twice a week and panic attacks" (R. 28); medical records showing Plaintiff as cooperative, calm, and pleasant upon examination, and with good insight and intact judgment at her most recent consultative examination (*id.*); that Plaintiff was, at times, working and completing parenting classes (*id.*); and a prior administrative medical opinion, finding Plaintiff capable of "interacting appropriately with coworkers and supervisors to learn tasks, accept criticism, and attend meetings" (R. 30). The ALJ rejected a medical opinion that Plaintiff was "unable to interact appropriately or tolerate contact with the public," instead noting "the record shows no significant behavior concerns when [Plaintiff was] seen, consistent with incidental ability to interact with the public." (*Id.*) Lastly, the ALJ found Dr. Peter Ciali's opinion that Plaintiff was only moderately impaired in her ability to respond appropriately to coworkers, supervisors, or the general public to be generally persuasive. (*Id.*; R. 413.)

6

1995)). Merely pointing to bare diagnoses—of which the ALJ was aware and found to be severe impairments (R. 25)—does not prove that Plaintiff was disabled or had specific functional limitations.

Second, Plaintiff argues her testimony, prescriptions, and general problems with bipolar disorder/anxiety all demonstrate that she "needs a job where she does not have to interact with the general public at all." (ECF No. 11 8-9.) As noted above, the ALJ sufficiently discussed Plaintiff's hearing testimony (*supra* n.2), and this discussion specifically included the statements Plaintiff highlights (*compare* R. 28 *with* ECF No. 11 at 8). Plaintiff cites to no portion of the record supporting the rest of her arguments.[3] As such, Plaintiff's contention that the ALJ should have found a different RFC is unfounded and amounts to a request that the undersigned reweigh evidence. Such a request is improper. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

**B. Step-Five.**

Plaintiff's primary argument on appeal is that the step-five jobs conflicted with both her RFC and the DOT. (ECF No. 11 at 5-9.) This argument is also unpersuasive.

---

[3] Plaintiff's statement of facts references instances of impaired insight or judgment occurring well before the alleged onset of disability in 2019. (ECF No. 11 at 2-4.) To the extent Plaintiff argues the ALJ failed to discuss these record notations, there was no error. While an ALJ is to consider all the evidence, she "is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *see also* 20 C.F.R. § 416.920(a)(3). Instead, in addition to discussing the evidence supporting her decisions, "the ALJ also must discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence" she rejects. *Clifton*, 79 F.3d at 1010. The ALJ was aware of the records indicating Plaintiff's insight and judgment were, at times, impaired. (R. 28 (citing these records and noting the "medical evidence of record shows mental health treatment from February 2012 until April 2016").) Plaintiff points to nothing other than her own interpretation of the record to indicate that the ALJ rejected this evidence or otherwise failed to account for limited impairment/judgment in the RFC. As such, the ALJ's failure to outline these specific exam findings was not an error.

At step five, the Commissioner has the burden "to show that the claimant retains sufficient RFC to perform work in the national economy, given her age, education, and work experience." *Lax*, 489 F.3d at 1084 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005) (alteration omitted)). An ALJ may rely on the testimony of a VE to satisfy the step-five burden and identify jobs that a claimant can perform—so long as all the RFC limitations are reflected in the hypothetical question propounded to the VE. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000).[4]

In this case, the ALJ presented the VE with a hypothetical that substantially matched—but was not identical to—the RFC contained in her decision. (*Compare* R. 57-58 *with* R. 27.) The hypothetical referred to someone who was limited to "less than occasional interaction with the general public" (R. 58), while the RFC limited Plaintiff to "incidental contact with the public" (R. 27). Plaintiff notes this difference in passing, but otherwise makes no argument that it constituted an error or robbed the step-five decision of substantial evidentiary support.[5] (ECF No. 11 at 8.) Because Plaintiff has presented no argument of error here, the Court will not consider it and will proceed to the substance of the ALJ's step-five findings. *See Sturgeon v. Colvin*, No. 15-CV-52-PJC, 2016 WL 1248905, at *5 (N.D. Okla. Mar. 29, 2016) ("[a] Social Security claimant must adequately develop arguments before a district court" (citing *Wall v. Astrue*, 561 F.3d 1048, 1066 (10th Cir. 2009)).

---

[4] In *Qualls*, the court found, where "the ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment," "the VE's answer to that question provided a proper basis for the ALJ's disability decision." *Id.*

[5] Typically, for Social Security purposes, the phrase "occasional" refers to an activity or condition that exists up to 1/3 of the time during a typical workday. *See* DOT, app. C, 1991 WL 688702 (4th ed. 1991). Plaintiff does not explain how—or whether—"less than occasional interaction" differs from "incidental contact."

In response to the hypothetical, the VE indicated that Plaintiff could work as a price marker, a church janitor, and a cleaner. (R. 58-59.) Based on this testimony, the ALJ concluded that Plaintiff could perform these three jobs and that the jobs existed in significant numbers in the national economy. (R. 31.) The ALJ also determined that the VE's testimony was consistent with the information contained in the DOT. (*Id.*)

Plaintiff argues that the ALJ erred in his step-five findings as to all three jobs. The Court will address the cleaner job first.

### 1.   Cleaner

Plaintiff largely argues that the cleaner job should have been excluded because her RFC should have included a limitation to no "interact[ion] with the general public at all." (*Id.* at 8-9.) The Court, however, has already found the RFC—with its limitation to "incidental contact with the public"—to be supported by substantial evidence. (*See* Section V(A), *supra*.) The Court, therefore, considers whether the job of cleaner is compatible with Plaintiff's RFC.

Plaintiff contends that the job of cleaner necessitates a "foreseeable amount of interaction with people," since it requires she be able to "[c]heck wraps and render[] personal assistance to patrons." (ECF No. 11 at 8 (citing DOT § 323.687-014, 1991 WL 672783).) But there is no apparent conflict between these duties and Plaintiff's RFC for incidental contact with the public. The job of cleaner involves a "people" rating of 8. DOT § 323.687-014. The "people" rating is graded on a scale of 0-8, with 8 being the "lowest possible level of human interaction that exists in the labor force." *Lane v. Colvin*, 643 F.

App'x 766, 770 n.1 (10th Cir. 2016) (unpublished).[6]  A people rating of 8—defined as "Taking Instructions-Helping"—is further explained as:

> Attending to the work assignment instructions or orders of supervisor.  (No immediate response required unless clarification of instructions or orders is needed.)  Helping applies to "non-learning" helpers.

DOT, app. B, 1991 WL 688701.  This is in contrast with, for example, a people rating of 7, where the worker attends "to the needs or requests of people or animals or the expressed or implicit wishes of people" with an "immediate response." *Id*.  The vast majority of the job description for a cleaner is unrelated to people.  *See* DOT § 323.687-014 (e.g., cleaning rooms and halls, folding linens, making beds, replenishing supplies, moving furniture).  As it relates to a cleaner, the DOT notes that the need for "Taking Instructions-Helping" is "Not Significant."  *Id*.  Thus, there is no apparent conflict between the cleaner job, as described in the DOT, and Plaintiff's RFC for incidental contact with the public.

### 2. Price Marker and Church Janitor

Plaintiff also argues her RFC is inconsistent with the jobs of price marker and church janitor, which require a reasoning level of 2.[7]  (ECF No. 11 at 5-8.)  In particular, Plaintiff argues this DOT reasoning level is in apparent conflict with her RFC limitation to "understand, remember, and carry out simple, routine instructions and tasks." (*Id*.)

#### a) Apparent Conflicts and the DOT

While an ALJ may rely on the VE's testimony at step five, *Qualls*, 206 F.3d at 1373, there are limits to this reliance.  An ALJ has a duty to develop the record, which includes

---

[6] Unpublished decisions are not precedential, but they may be cited for their persuasive value.  10th Cir. R. 32.1(A).

[7] Plaintiff argues that—if these two jobs are eliminated—the remaining "cleaner" jobs would not be sufficient in number to support a step-five finding.  (ECF No. 11 at 9-10.)  As the Court finds no error in the inclusion of all three jobs, it need not reach the numerical sufficiency argument.

10

questioning the VE about the source of her opinions and any deviations from publications like the DOT. *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). "[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Id.*; *see also* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) ("When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled.").

### b) The Alleged Conflict in this Case

Here, the alleged conflict arises from the GED reasoning level for the price-marker and church-janitor jobs. The DOT appends a "definition trailer" to each job, which is comprised of a number of selected occupational characteristics, including the General Educational Development ("GED") Scale.[8] *See* DOT, app. C, 1991 WL 688702 (4th ed.

---

[8] Plaintiff also argues that the Administration's definition of "unskilled work" supports her step-five claims. (ECF No. 11 at 7.) The Court notes that GED is different from a job's Specific Vocational Preparation level ("SVP"), which refers to "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *See* DOT, App. C, 1991 WL 688702. Some courts have noted that the "ability to perform unskilled work is dependent more upon the SVP level of the work . . . than it is upon the [GED] reasoning level." *George Paul B. v. Kijakazi*, No. CV 21-2075-JWL, 2022 WL 1684670, at *5 (D. Kan. May 26, 2022). Such courts would—therefore—find this entire discussion of reasoning level, which relates to "educational development" and not "mental abilities," to miss the point. *Karen Jean M. v. Saul*, No. CV 19-2455-JWL, 2020 WL 5057488, at *14 (D. Kan. Aug. 27, 2020). These courts acknowledge that the district courts are still bound by the holding in *Hackett* that level-three reasoning is inconsistent with certain RFC limitations. *See George Paul*, 2022 WL 1684670, at *5.

In any event, the Court finds Plaintiff's arguments regarding semiskilled work (ECF No. 11 at 7) to miss the mark, particularly where the jobs at issue involved an SVP of 2 (anything beyond a short demonstration up to and including 1 month). DOT § 209.587-034 (price marker); DOT § 389.667-101 (church janitor).

11

1991). The GED Scale is divided into three subparts: Reasoning Development, Mathematical Development, and Language Development. *Id.* There are six levels for each GED Scale subpart, with level one representing the lowest development level and level six representing the highest. *Id.* The lowest three levels—reasoning levels 1-3—require the following:

> LEVEL 1
>
> Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.
>
> LEVEL 2
>
> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
>
> LEVEL 3
>
> Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

DOT, app. C, 1991 WL 688702 (4th ed. 1991).

The jobs of price marker and church janitor each require the second-lowest reasoning level of 2. *See* DOT § 209.587-034, 1991 WL 671802 (price marker); DOT § 389.667-010, 1991 WL 673278 (church janitor). Plaintiff argues her RFC limitation to "understand, remember, and carry out simple, routine instructions and tasks" is inconsistent with level-two reasoning, which involved "<u>detailed</u> but uninvolved" instructions and "problems." (ECF No. 11 at 6 (emphasis added).)

The undersigned has already found that there is no apparent conflict between an RFC limiting a claimant to "simple, routine tasks" and reasoning level 2. *See James A. M. v. Kijakazi*, No. 20-CV-00372-JED-SH, 2022 WL 1510563, at *4-6 (N.D. Okla. Jan. 26,

2022). Plaintiff has provided no basis from which the Court might question or reconsider the reasoning in that decision. *James A.M.*, however, left open the question of whether simple, routine "instructions" necessarily require a higher reasoning level than simple, routine "tasks." *Id.* at *6 n.7. The Court finds it does not.

### c) Tasks/Work versus Instructions

As discussed in *James A.M.*, the weight of authority supports a finding that "simple and routine work tasks" or "simple, repetitive and routine work" are consistent with level-two reasoning. *Id.* at *4-6. In this regard, the Court notes the statement (arguably dicta) from *Hackett* that "level-two reasoning appears more consistent" with an RFC requiring "simple and routine work tasks," 395 F.3d at 1176, and the holding from *Stokes v. Astrue* that "simple, repetitive and routine work" does not restrict a worker to reasoning level 1, 274 F. App'x 675, 684 (10th Cir. 2008) (unpublished).

Even so, some courts cite another unpublished Tenth Circuit case for the proposition that there is an apparent conflict between "simple instructions" (or tasks) and level-two reasoning—*Paulek v. Colvin*, 662 F. App'x 588 (10th Cir. 2016). *See, e.g.*, *C.H.C. v. Comm'r, Soc. Sec. Admin.*, No. 20-CV-02428-KLM, 2022 WL 950433, at *8 (D. Colo. Mar. 29, 2022); *M.E. v. Comm'r, Soc. Sec.*, No. 1:21-CV-00337-CNS, 2023 WL 2674419, at *3-4 (D. Colo. Mar. 29, 2023); *Alissia M. v. Saul*, No. 19-2105-EFM, 2020 WL 1847745, at *11 (D. Kan. Apr. 13, 2020). The undersigned, however, does not believe *Paulek* goes so far.

In *Paulek*, while the claimant could "understand, remember and carry out simple instructions," the step-five jobs required a reasoning level of 3. 662 F. App'x at 591, 594. The *Paulek* court was not analyzing jobs with a reasoning level of 2. Still, in deciding the case before it, the court noted with approval the finding from *Hackett* that "a limitation

13

to 'simple and routine work tasks . . . seems inconsistent with the demands of level-three reasoning,'" *id.* (quoting *Hackett*, 395 F.3d at 1176), but also noted that this Circuit has "not spoken to whether a limitation to simple and routine work tasks is analogous to a limitation to carrying out simple instructions," *id.* The court then noted the Eighth Circuit case of *Lucy v. Chater*, which it characterized as holding "that a limitation to simple instructions is inconsistent with both level-two and level-three reasoning." *Id.* (citing *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997). It appears, therefore, that the *Paulek* court was comfortable extending the *Hackett* finding from "tasks" to "instructions" based on *Lucy*. As a result, the court found a conflict between "simple instructions" and level-three reasoning level. *Id.* The court in *Paulek* made no findings as to level-two reasoning.

Even if *Paulek* could be read as endorsing the view that—per *Hackett*, simple "tasks" are consistent with level-two reasoning, but per *Lucy*, simple "instructions" are not—the undersigned would not find it persuasive. In *Lucy*, the ALJ found the claimant had borderline intellectual functioning but could still perform the full range of sedentary work. 113 F.3d at 907. The Eighth Circuit found the ALJ erred in reaching this conclusion "without consulting the testimony of a vocational expert." *Id.* at 908. The court further rejected the Commissioner's argument that no expert was needed where the claimant could follow "simple directions," noting that the Administration's "own list of unskilled sedentary jobs . . . indicates that many jobs within this range require more than the mental capacity to follow simple instructions" and "require level two reasoning or higher . . . ." *Id.* at 909 (comparing level-one ability to carry out simple instructions with the level-two ability to carry out detailed instructions). This finding, however, was not integral to the court's holding, nor did it come in the context of step-five jobs.

14

Moreover, the Tenth Circuit in *Hackett* itself did not read *Lucy* this way. Instead, the court in *Hackett* noted the exact issue from *Lucy* that has bedeviled our courts—observing that the Eight Circuit "reject[ed] [the] contention that a claimant limited to following only simple instructions could engage in the full range of sedentary work because many unskilled jobs in that category require reasoning levels of two or higher"—then noted that "level-two reasoning appears more consisted with Plaintiff's RFC" for "simple and routine work tasks" and held that there was an apparent conflict between this RFC and level-three reasoning. 395 F.3d at 1167.

### d) The RFC and DOT in this Case

Without a bright-line rule to follow, the undersigned steps back from a myopic consideration of whether a single word from the RFC specifically matches a single word from the DOT description of the job—keeping in mind that a Court should avoid parsing the ALJ's language too finely. *See Carver v. Colvin*, 600 F. App'x 616, 620 (10th Cir. 2015) (unpublished).

Here, Plaintiff's RFC provided more nuance than just a limitation to "simple instructions."

> [Plaintiff] is limited to unskilled work that includes the ability to understand, remember, and carry out simple, routine instructions and tasks; make simple work-related decisions; and respond appropriately to occasional routine changes in the work setting. She can perform job tasks independently, appropriately, and at a consistent pace. She can perform goal-oriented work in which job tasks do not have to be completed within a strict time deadline.

(R. 27.) The ALJ provided these limitations to the VE, who opined that Plaintiff could perform the price-marker and church-janitor jobs. (R. 57-59.) The ALJ asked the VE whether this testimony was consistent with the DOT, and the VE said it was. (R. 59.)

15

Plaintiff now asks the Court to find that the ALJ should have recognized an <u>apparent</u> conflict between this testimony and reasoning level 2's abilities to:

> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

DOT, app. C, 1991 WL 688702. The Court declines to find such a conflict. It is certainly true that the RFC refers to "simple . . . instructions," while the DOT refers to "detailed but uninvolved . . . instructions." Yet a person who could carry out simple, routine instructions could easily be seen as capable of using commonsense understanding to carry out detailed but uninvolved instructions, particularly in a job with problems involving "a few concrete variables" and "standardized situations."[9] Moreover, the ALJ's RFC for this particular Plaintiff went further, noting an ability to engage in independent (if simple) decision-making and to perform goal-oriented work. This fits easily within the overall scope of level 2 reasoning. The Court, therefore, finds no apparent unresolved conflict between the VE's testimony and the DOT. *See also Rainwater v. Colvin*, No. 15-CV-491-GKF-FHM, 2016 WL 11468941, at *2 (N.D. Okla. Sept. 21, 2016) ("designation that a job involves carrying out detailed, but uninvolved instructions indicates that every step of the process is defined, but that the process is fairly simple, [i.e.,] uninvolved"), *R&R adopted*, 2016 WL 6561298 (Nov. 4, 2016); *Kerr v. Berryhill*, No. CV 16-799 GJF, 2017 WL 3531506, at *14 (D.N.M. Aug. 16, 2017) (finding no inconsistency between limitation to

---

[9] The Court rejects arguments that equate reasoning level 1 with a limitation to "simple instructions," as that level refers to "simple one- or two-step instructions," something much more restrictive. *See* DOT, app. C, 1991 WL 688702. Plaintiff was not limited to one/two-step instructions, and the Court rejects any arguments to the contrary. (*See, e.g.*, ECF No. 11 at 7.)

"uncomplicated instructions," "simple instructions," and the DOT's description of "detailed but uninvolved" instructions).

## VI. Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED**.

**SO ORDERED** this 31st day of August, 2023.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT